UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACIA MARSHALL,

        Plaintiff,                                     Case No. 1:12-cv-852

v.                                                HON. JANET T. NEFF

NATIONSTAR MORTGAGE, LLC et al.,

        Defendants.
_____/

**OPINION**

This case is before the Court following removal from the Kent County, Michigan, Circuit Court on August 16, 2013. Plaintiff's First Amended Complaint (FAC) alleges several related causes of action against Defendants following the foreclosure and sheriff's sale of her home. Defendants have filed a Motion to Dismiss (Dkts 40, 41). Plaintiff has filed a Response (Dkt 44), and Defendants have filed a Reply (Dkt 42). Having fully considered the parties' briefs and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion. *See* W.D. Mich. LCivR 7.2(d). The Court grants Defendants' Motion to Dismiss.

**I. Facts**

On April 4, 2007, Plaintiff obtained a $120,150.00 loan (the "Loan") from Arbor Mortgage Corporation ("Lender") and executed a mortgage on her home in Wyoming, Michigan, in favor of Mortgage Electronic Registrations Systems, Inc. (MERS) (FAC ¶¶ 9, 10 & Ex. A; Defs. Mot. Br., Ex. 1). MERS assigned the mortgage to Defendant Nationstar Mortgage, LLC on March 2, 2011 (FAC ¶ 15; Defs. Mot. Br., Ex. 2).

In October 2010, Plaintiff experienced health problems that caused her to go on unpaid medical leave from her job; in early 2011, Plaintiff fell behind on her mortgage payments and defaulted on her loan (FAC ¶¶ 16-18). Nationstar commenced foreclosure proceedings; however, the May 11, 2011 foreclosure sale was subsequently adjourned, and Plaintiff was offered a loan modification trial period plan (TPP) (*id.* ¶¶ 28-30; Defs. Mot. Br., Ex. 3 at 4-5). Plaintiff made three TPP payments on the Mortgage to Defendant Nationstar; the first payment on June 30, 2011, in the amount of $850.00, the second payment on July 23, 2011, in the amount of $833.00, and the third payment on August 31, 2011 in the amount of $833.00 (FAC ¶ 32). No permanent loan modification was ever consummated; the Property was ultimately foreclosed and sold at a Sheriff's Sale on November 2, 2011 to Defendant Nationstar; and later transferred by quit-claim deed to Defendant Federal National Mortgage Association ("Fannie Mae") (*id.* ¶ 34; Defs. Br., Exs. 3 & 6). The redemption period expired six months after the foreclosure sale, on May 2, 2012 (Defs. Br., Ex. 3 at 9). Plaintiff did not redeem the Property.

After this case was removed to this Court, the parties attempted over the course of the next year to reach a settlement. Despite significant efforts, no resolution could be reached, and Defendants requested that the Court entertain a motion to dismiss. The Court conducted a pre-motion conference with counsel in December 2013, and granted Plaintiff's request to amend her complaint. On January 22, 2014, Plaintiff filed a First Amended Complaint (FAC) (Dkt 39), alleging four counts: (1) Breach of Contract (Note and Mortgage) (Count 1); (2) Breach of Contract (HAMP TPP) (Count 2); (3) Quiet Title Based on Void or Voidable Sheriff's Deed (Count 3); and (4) violation of the Michigan Mortgage Brokers, Lenders, and Servicers Act (MBLSA) (Count 4). The parties thereafter proceeded with briefing on the motion to dismiss.

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing FED. R. CIV. P. 10(c)). The court may also consider documents referred to in the pleadings that are integral to the claims, as well as matters of public record, without converting a motion to dismiss into one for summary judgment. *Id.* at 336; *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).[1]

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[1]The Court will thus consider the 2007 Note, Mortgage, and other appropriate related documents as part of the pleadings for purposes of this Motion.

### III. Analysis

Defendants advance several independent bases for dismissal and have submitted a number of documents to support their contentions, including public records and other documents relating to the loan, mortgage, foreclosure and sale of the Property at issue. These exhibits include the signed recorded mortgage (Ex. 1), the recorded Assignment of Deed of Trust (Ex. 2), the recorded Sheriff's Deed (Ex. 3), a May 11, 2011 loan modification Trial Period Plan/Notice with letters to Plaintiff (Ex. 4), a permanent loan modification agreement and mail label to Plaintiff (Ex. 5), and a recorded Quit Claim Deed (Ex. 6). Defendants assert these documents are properly considered with their motion to dismiss because the documents were relied upon or referenced in Plaintiff's complaint and are central to her claims. *See Commercial Money Ctr.*, 508 F.3d at 336; *Greenberg*, 177 F.3d at 514 (the court may consider documents referred to in the pleadings that are integral to the claims, as well as matters of public record, without converting a motion to dismiss into one for summary judgment).

Plaintiff objects to the Court considering these documents. Plaintiff asserts that "Defendants attempt to rely on cherry-picked documents in a manner that would override the facts set forth in Plaintiff's First Amended Complaint" (Pl. Resp. at 5-6). Plaintiff argues that the rule permitting consideration of such documents "assumes that the parties agree that the attached document is the one referred to in the complaint and is central to the plaintiff's claims" (*id.* at 5). Plaintiff states that the accuracy and existence of the documents must also be undisputed, as must the facts asserted in any public document (*id.* at 7-8). Plaintiff asserts that the Trial Period Plan and permanent modification submitted by Defendants are different from those referenced in her complaint. Plaintiff concedes that the recorded documents are public records, which may be relied upon in deciding

Defendants' motion to dismiss, but she argues that "the facts asserted in the records identified by Defendants remain in dispute," and since they are contrary to the facts asserted by Plaintiff in her First Amended Complaint, this Court cannot rely upon them in deciding a Rule 12(b)(6) motion (*id.* at 9).

The Court finds little, if any, merit in Plaintiff's arguments that the Court should not consider these documents or the facts to the extent documented therein merely because Plaintiff's allegations in her complaint are to the contrary. On a Rule 12(b)(6) motion, the Court is not bound to accept as true "unwarranted" allegations or factual inferences in the complaint, including allegations "contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *McGee v. City of Cincinnati Police Dep't,* No. 1:06-CV-726, 2007 WL 1169374, at *2 (S.D. Ohio Apr. 18, 2007); s*ee also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (the court draws all *reasonable inferences* in favor of the nonmoving party (emphasis added)).

Plaintiff's allegations in her complaint and her legal claims necessarily hinge on the relevant public records and other loan, mortgage and foreclosure related documents. Plaintiff attached nothing more than an unsigned note and mortgage to her First Amended Complaint, and attached only a differently-copied version of the same document to her Response (Dkt 39, Ex. A; Dkt 44, Ex. A). Although Plaintiff alleges defects in the foreclosure process that purportedly render the sheriff's sale voidable, she relies on nothing more than bare, unsupported allegations. Plaintiff does not claim that the documents attached by Defendants are false or fraudulent, and she points to no particular facts therein that are erroneous or misrepresentations.

The Court finds the cases cited by Plaintiff inapposite. *See* Pl. Resp. at 6-8, citing, e.g., *Wilson v. Trumbull Cnty. Dept. of Job & Family Servs*., No. 4:12 CV 02163, 2013 WL 3776743, at

\*4 (N.D. Ohio July 17, 2013) (court declined to consider a police report authored by one of the defendants, which contained that defendant's version of the incident in question and descriptions of conversations he claimed to have had with the plaintiffs); *Harrison v. PNC Fin'l Servs. Group*, 928 F. Supp. 2d 934, 944 (S.D. Ohio 2013) (the defendants almost exclusively referenced the seven exhibits they attached to motion to dismiss to present the "facts" of the case with little reference to what the plaintiff had stated in his amended complaint). "[I]n general a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). "[T]he majority of the cases which do not allow a court to take judicial notice of the contents of a public record do so because there is no way for an opposing party, prior to the issuance of the court's decision, to register his or her disagreement with the facts in the document of which the court was taking notice." *Id.* That does not appear to be the situation here. Plaintiff essentially disputes the surrounding circumstances and that she received certain documents.

The Court finds no basis for indiscriminately disregarding the documentary evidence submitted by Defendants. The Court will consider the documents in evaluating Plaintiff's claims in accordance with the standards for deciding a Rule 12(b)(6) motion. To the extent Plaintiff asserts facts different from those evidenced in the documents, the Court will accept all plausible well-pleaded factual allegations in the complaint as true, and draw all *reasonable* inferences in Plaintiff's favor. *See Thompson*, 773 F.3d at 750; *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (emphasis added). As noted above, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A. Counts 1, 3 and 4

Defendants argue that Plaintiff's claims are barred due to the expiration of the redemption period. Further, Plaintiff's assertions regarding alleged notice defects are wrong, and in any event, do not permit setting aside the sale. Defendants therefore contend that Counts 1, 3, and 4 fail to state claims as a matter of law.

Plaintiff responds that she has stated claims based on wrongful foreclosure. She characterizes Defendants' argument as primarily that Plaintiff lacks standing to challenge the foreclosure. She states that the standing issue is a "red herring" that has been routinely rejected by the Courts, including this Court.

Defendants, in turn, reply that their primary argument was not that Plaintiff lacked standing. And regardless how the issue is framed, the expiration of the redemption period still bars a plaintiff's claim if she cannot make the requisite showing of fraud and prejudice. *See Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355 (6th Cir. 2013); *Kim v. JP Morgan Chase Bank, N.A.*, 825 N.W.2d 329 (Mich. 2012).

This Court has previously addressed the standing issue in the context of a foreclosure challenge, and this point need not be belabored here. *See Lamie v. Fed. Home Loan Mortg. Corp.*, No. 1:11–cv–156, 2012 WL 1835243, at *3-4 (W.D. Mich. May 21, 2012). Standing is not the proper theory on which to seek dismissal of a foreclosure challenge after the expiration of the redemption period. *Id.* Instead, courts look to the merits of the challenge for which the standard is well-established. "[O]nce the redemption period has expired, a plaintiff must meet a high standard for a federal court to invalidate or set aside a mortgage foreclosure by advertisement in Michigan. In particular, a plaintiff must show both fraud related to the foreclosure process itself and that he or

she was prejudiced by the defendant's failure to comply with the foreclosure statute's requirements."[2] *Maslowski v. Mortg. Elec. Registration Sys., Inc.*, No. 1:12–CV–514, 2013 WL 5876608, at *1 (W.D. Mich. Oct. 31, 2013) (citing *Conlin*, 714 F.3d at 359-62).

Plaintiff asserts that she has identified several serious defects and irregularities in the foreclosure-by-advertisement process, and can demonstrate that she was harmed by these defects (Pl. Resp. at 13). These include:

(1) no notice of the default, as required by the mortgage, prior to foreclosure, which requires notice of how much was due and owing and how the borrower can cure the default (*id.* at 13-15, citing FAC ¶¶ 11-12, 13, 18);

(2) no posted notice of the foreclosure on her home on April 15, 2011 (*id.* at 14, 18-19, citing FAC ¶ 26);

(3) no notice of her rights as required by MICH. COMP. LAWS § 600.3205a, including notice of the option of consideration for a loan modification, and if a modification was denied, the right to a judicial foreclosure—a process that would have afforded her a great deal more notice, and more substantive rights prior to foreclosure (*id.* at 15-17, citing FAC ¶¶ 19, 25-26); and

(4) no permanent loan modification as promised by Nationstar despite Plaintiff having made all three required trial period payments in June, July and August 2011 (*id.* at 14, citing FAC ¶¶ 20-24, 28).

---

[2]Plaintiff's allegation that she did not receive the notice of her default required by her mortgage, even if true, does not establish an irregularity in the foreclosure itself and thus provides no basis for setting aside the foreclosure and sheriff's sale.

Plaintiff argues that taken as a whole, the violations show that Defendants engaged in a dual track process, engaging in a foreclosure process on the one hand while on the other hand discussing loss mitigation options with Plaintiff and gathering documents and accepting loan modification payments under a trial period plan. Plaintiff asserts that had she known about the pending foreclosure, she "would have had the choice of whether to trust Nationstar's loan modification review process, or to attempt to stop the foreclosure by a Chapter 13 bankruptcy, a judicial process permitted in MCL 600.3205b, or by borrowing the money needed to reinstate the mortgage. All of these avenues were open to her prior to foreclosure, and taken away from Plaintiff once the foreclosure went through" (Pl. Resp. at 19).

As noted above, Plaintiff's allegations are nothing more than unsupported assertions. To the extent that Plaintiff's allegations are merely bare, general assertions, unsupported by any factual detail or evidence, this Court does not find them "well-pleaded," and thus entitled to the presumption that they are true for purposes of a Rule (12)(b)(6) motion.[3] For instance, with regard to the lack of notice, Plaintiff's First Amended Complaint states:

> 25. On April 15, 2011, Defendants claim that a notice of foreclosure was posted on Marshall' [sic] property; however, Marshall was at the home on and off during that day, and never saw a notice of foreclosure attached to the home.
>
> 26. Upon information and belief, a notice of foreclosure was not attached to the Property on April 15, 2011.

But even viewing the facts and all reasonable inferences in favor of Plaintiff, Plaintiff's allegations do not establish viable legal claims to challenge the foreclosure and sheriff's sale. The alleged

---

[3] As Defendants note, many of Plaintiff's key allegations on which she relies are merely based on "information and belief."

9

defects do not rise to the high level of irregularity in a foreclosure sale to render the sheriff's deed voidable. Nor has Plaintiff made a sufficient showing of prejudice to void the sale.

"Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law." *Conlin*, 714 F.3d at 359; *see* MICH. COMP. LAWS § 600.3204. "While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose, [], it also controls the rights of both the mortgagee and the mortgagor once the sale is completed." *Conlin*, 714 F.3d at 359. "The statutes provide the mortgagor six months after the sheriff's sale in which to redeem the property." *Id.*; *see* MICH. COMP. LAWS § 600.3240(8). "Once this statutory redemption period lapses, however, the mortgagor's 'right, title, and interest in and to the property' are extinguished." *Conlin*, 714 F.3d at 359 (citation omitted); *see* MICH. COMP. LAWS § 600.3236.

"Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties." *Conlin*, 714 F.3d at 359. Once the statutory redemption period has expired, a court's ability to set aside a foreclosure sale is drastically circumscribed: A court can only entertain the setting aside of a foreclosure sale "where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Id.* (citation omitted). "[N]ot just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Id.* at 360 (citation omitted).

1. Notice

Plaintiff's allegations of defective notice do not suffice to state a valid claim to set aside the foreclosure. First, as Defendants contend, and contrary to Plaintiff's arguments, the public documents defeat Plaintiff's unsupported assertions of notice. For instance, the Evidence of Sale and Affidavit of Publication show the publication of the notice on April 8, 15, 22, and 29, 2011 and

posting at the Property on April 15, 2011 as required under MICH. COMP. LAWS § 600.3208[4] (Dkt 41-3 at p. ID# 217-18), both of which were recorded. Plaintiff alleges that she was home on and off on the day of the posting and never saw it. However, "[w]here evidence of a posting is shown, the burden of proving that it did not occur shifts to the party attacking the notice." *Prentice v. Bank of New York Trust Co.*, 2009 WL 1139332, at *3 (Mich. Ct. App. Apr 28, 2009) (citing *Cox v. Townsend*, 282 N.W.2d 223, 225 (Mich. Ct. App. 1979)). Further "[a]ny facially proper service requires a considerable showing of proof before it may be set aside, and courts generally consider a bare denial of service insufficient." *Fed. Home Loan Mortg. Corp. v. Hassell,* No. 11–14564, 2013 WL 823241, at *8 (E.D. Mich. Mar. 6, 2013) (citing *Delph v. Smith*, 91 N.W.2d 854, 856-57 (1958)). "'A failure to observe the posting does not, by itself, contradict evidence that the notice was properly posted.'" *Nederhoed v. JP Morgan Chase Bank*, No. 1:12–CV–704, 2013 WL 5533683, at *4 (W.D. Mich. Oct. 7, 2013) (citations omitted).

The affidavits submitted by Defendants are presumptive evidence of the facts stated therein, i.e., proper notice. *Nederhoed*, 2013 WL 5533683, at *3; *see* MICH. COMP. LAWS § 600.3264 (affidavits recorded by the register of deeds "shall be presumptive evidence of the facts therein contained"). Likewise, the publicly recorded Affidavit of MICH. COMP. LAWS § 600.3205 Notice (Dkt 41-3 at 8), attests to the fact that Nationstar's foreclosure counsel served the proper notice under MICH. COMP. LAWS § 600.3205a to Plaintiff on March 7, 2011, and the time for Plaintiff to request a housing counselor meeting under that statute expired without any request by Plaintiff.

---

[4]Under Michigan law, notice of a mortgage foreclosure must be published in a newspaper for four successive weeks and "shall be posted in a conspicuous place upon any part of the premises described in the notice" within 15 days after the first publication of the notice. MICH. COMP. LAWS § 600.3208.

11

Plaintiff's bare assertions that she did not receive proper notice do not overcome this evidence. *See* MICH. COMP. LAWS § 600.3264.

In any event, as Defendants contend, even if Plaintiff's allegations of lack of notice are taken as true, Plaintiff's claims seeking to set aside the foreclosure still fail because Plaintiff has failed to show prejudice. A defect in notice only renders a foreclosure sale voidable, not void. *Conlin*, 714 F.3d at 361; *see also Rishoi v. Deutsche Bank Nat'l Trust Co.*, 552 F. App'x 417, 422 (6th Cir. 2013) (the Michigan Supreme Court has held that proving a defect or irregularity in a foreclosure proceeding results in a foreclosure that is *voidable*, not *void ab initio*) (citing *Kim*, 825 N.W.2d at 337). Consequently, Plaintiff must establish that prejudice resulted from any alleged irregularity, in order to reclaim the Property. "'To demonstrate such prejudice, [Plaintiff] must show that [she] would have been in a better position to preserve [her] interest in the property absent [Defendants'] noncompliance with the statute.'" *Conlin*, 714 F.3d at 361 (citation omitted).

Plaintiff alleges prejudice as follows:

> 83. Had Plaintiff learned of the pending Sheriff's Sale at any time prior to the sale date, she would have been in a better position to preserve her interest in her home because she would have had the opportunity take several actions, including reinstating as permitted by the Mortgage; using a Chapter 13 bankruptcy to preserve her interest in her home while paying the past-due payments; or filing a lawsuit to stop the Sheriff's Sale because of Defendant Nationstar's violations of the foreclosure-by-advertisement statute.

(FAC ¶ 83). Plaintiff states that she might also have been able to borrow money needed to reinstate the mortgage or have obtained a judicial foreclosure (Pl. Resp. at 19). These allegations and statements fail to show that the lack of notice resulted in prejudice to Plaintiff in order to set aside the foreclosure.

First, Plaintiff's allegations are merely speculative since Plaintiff only identifies possible options she might have had—none of which establish that the sheriff's sale would not have occurred. Moreover, Plaintiff had the opportunity to redeem the property and she failed to do so. Plaintiff's claims of prejudice are substantially weakened by her failure to tender any money to redeem the property. *See Stauffer v. Deutche Bank Nat'l Trust Co.*, No. 1:11-cv-961 (W.D. Mich. Sept. 25, 2013) (Defs. Mot. Br., Ex. 10). *See also Steinberg v. Fed. Home Loan Mortg. Corp.*, 901 F .Supp. 2d 945, 952 (E.D. Mich. 2012) (stating in the context of laches: "Defendants' failure to comply with the foreclosure notice statute did not prejudice Plaintiffs because Plaintiffs did nothing to redeem the property or challenge the foreclosure once they had notice."); *Gattari v. Saxon Mortg. Servs., Inc.*, No. 12–13024, 2012 WL 5301612, at *3 (E.D. Mich. Oct. 24, 2012) (no allegation of prejudice resulting from notice defect, for example, that the defect in notice "(1) prevented them from making a bid at the sale; (2) that they possessed the funds to outbid the highest bid let alone to pay the entire unpaid balance owing on the loan; (3) that they attempted to redeem the property during the redemption period …") (citation omitted).

In *Sweet Air Investment, Inc. v. Kenney*, 739 N.W.2d 656, 662 (Mich. Ct. App. 2007), the court found that the defendants failed to show prejudice from any alleged defect in the notice of adjournment where: "Defendants were not timely in challenging the validity of the foreclosure sale, and they made no effort to redeem or take any action until well after the redemption period had run. Defendants waited until plaintiff instituted proceedings to evict them before they took any action to challenge the foreclosure sale." Similar facts exist in this case. Plaintiff took no action to challenge the foreclosure until after summary eviction proceedings were initiated against her. Plaintiff has not demonstrated prejudice from any alleged inadequate notice.

13

2. Denial of a Permanent Loan Modification

Plaintiff alleges wrongful foreclosure (Pl. Resp. at 10-17) and breach of contract (Count 2) based on the denial of a permanent loan modification. These allegations similarly lack substantiation and do not state valid claims. Accordingly, Defendants are entitled to dismissal for failure to state a claim.

Plaintiff's First Amended Complaint alleges that she was offered a loan modification, had a contract with Defendant Nationstar for a permanent modification, and that Nationstar breached that contract. These allegations are in key part as follows:

> 21. In April 2011, an agent of Defendant Nationstar told Marshall that she qualified for a loan modification under the Making Homes Affordable Program [sic] (HAMP).
>
> 22. According to the agent, at the end of a 3-month trial plan, Marshall's mortgage would be modified at a reduced interest rate, and a lower payment.
>
> 23. Defendant Nationstar requested that Marshall provide certain documents to be considered for the program.
>
> 24. On April 15, 2011, Marshall sent the requested documents to Defendant Nationstar by facsimile.
>
> * * *
>
> 28. At some time after April 15, 2011, Defendant Nationstar offered Marshall a temporary modification pursuant to which she was to make three monthly payments, beginning in July 2011, after which she would receive a permanent modification of her mortgage.
>
> 29. Upon information and belief, the temporary modification was mailed to Marshall with a cover letter attached to it.
>
> 30. Marshall received a temporary modification in the mail, signed the document and returned it to Nationstar.
>
> 31. Upon information and belief, the temporary modification was a Trial Period Plan offered pursuant to the HAMP program.

32. Marshall made three payments on the Mortgage to Defendant Nationstar; the first payment on June 30, 2011, in the amount of $850.00, the second payment on July 23, 2011, in the amount of $833.00, and the third payment on August 31, 2011 in the amount of $833.00.

33. Defendant Nationstar accepted each of these three payments.

\* \* \*

49. In 2010, [sic, 2011?] Defendant Nationstar offered Plaintiff a TPP under the HAMP program.

\* \* \*

59. Fannie Mae's guidelines required Defendant to sign a copy of the TPP after accepting the first payment from Plaintiff under the TPP.

60. Upon information and belief, Nationstar signed a copy of the TPP.

61. Plaintiff and Defendant Nationstar entered into a contract to modify the existing mortgage and loan, whereby Plaintiff agreed to make payments pursuant to the TPP, and upon the successful completion of that TPP, Defendant Nationstar agreed to provide Plaintiff with a permanent loan modification.

62. Plaintiff complied with all document requests made by Defendant Nationstar and made all of the necessary payments under the TPP.

63. Defendant Nationstar breached the contract by failing to provide a permanent modification to Plaintiff when she had established her eligibility for the modification.

64. Plaintiff was damaged by these breaches.

Plaintiff has submitted no supporting documentation for any of her allegations, and the allegations are not otherwise substantiated by the record. Defendants have, however, submitted documents they contend relate to the above allegations, including a Trial Period Plan Notice to Plaintiff dated May 11, 2011, concerning a Fannie Mae Loan Modification (Defs. Mot. Br., Ex. 4), and a September 16, 2011 letter/notice of eligibility for a permanent loan modification and agreement (unsigned by Plaintiff) with a Federal Express overnight mailing label (*id.*, Ex. 5). Defendants contend that these documents are the loan modification documents sent to Plaintiff and

the TPP that Nationstar provided to Plaintiff on May 11, 2011 was a Fannie Mae TPP, not a HAMP TPP. Defendants argue that Plaintiff's loan modification allegations are frivolous.

Defendants assert that the documents they have submitted unmistakably correspond directly to the "TPP" and "permanent loan modification" relied upon by Plaintiff throughout her First Amended Complaint—the dates correspond with Plaintiff's dates, and the trial payment amounts correspond. Defendants state that upon completion of the TPP, Nationstar offered Plaintiff a permanent modification on September 15, 2011,[5] which Plaintiff failed to execute, and thus, the time for acceptance expired (Defs. Mot. Br. at 23). Consequently, Nationstar proceeded with foreclosure on November 2, 2011 (*id.* at 24). Defendants assert that contrary to Plaintiff's allegations, both the TPP and the permanent modification are unsigned.

The Court agrees that the loan documents submitted by Defendants largely undermine Plaintiff's allegations. Plaintiff's factual allegations are framed to make out her legal claim, but are devoid of any substantiation, even potential substantiation on the facts before the Court. Nothing in this case supports Plaintiff's allegations of a contract with Nationstar for a permanent loan modification under HAMP.

On a Rule 12(b)(6) motion, the Court is not bound to accept as true "unwarranted" allegations or factual inferences in the complaint, including allegations "contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *McGee*, 2007 WL 1169374, at *2; *see also Moon*, 465 F.3d at 728 (the court draws all *reasonable inferences* in favor of the nonmoving party (emphasis added)). Here, the loan modification evidence submitted by Defendants coincides with the TPP payments made by Plaintiff. Plaintiff does not contest the

---

[5]This appears to be the September 16, 2011 offer.

16

authenticity of the Fannie Mae loan modification documents. It cannot reasonably be inferred that there was second modification, under HAMP, operative at the same time. In fact, even though Plaintiff may have sent documents relating to a HAMP modification, the May 11, 2011 Trial Period Plan Notice addressed to Plaintiff expressly states that Plaintiff was determined to be ineligible for a HAMP permanent loan modification:

> Dear Stacia Marshall:
>
> We want to continue to work with you to modify your mortgage and help make your payments more affordable. Unfortunately, we were unable to approve your request for a permanent loan modification under the federal government's Home Affordable Mortgage Program (HAMP), because the current DTI is less than 31%. For detailed information, please see the HAMP Non-Approval Notice included in this package.
>
> **Fannie Mae Loan Modification**
>
> The good news – you may be eligible for another option – a modification offered by Fannie Mae (the owner of your loan). This modification is designed for borrowers, like you, who for some reason did not meet all of the eligibility criteria for a permanent modification under HAMP.

(Defs. Mot. Br., Ex. 4 at 1).

Absent any evidence, and any supporting facts, Plaintiff's allegations of a contract for a permanent loan modification under HAMP are unwarranted and her claims of wrongful foreclosure or breach of contract based on those allegations are not plausible. Defendants are entitled to dismissal of this claim.

## B. Remaining Arguments

Defendants advance additional grounds for dismissal of Plaintiff's claims, including that Plaintiff's foreclosure claims fail because she is guilty of laches, and her loan modification claim is barred by the statute of frauds. Having determined that all four counts of Plaintiff's FAC are

properly dismissed on other grounds, the Court need not resolve the issues raised by these alternate grounds for dismissal.

### IV.  Conclusion

"'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" *Sweet Air Inv.*, 739 N.W.2d at 659 (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997)). Plaintiff has failed to show any viable claim related to the foreclosure and sheriff's sale of her Property.  Accordingly, Defendants' Motion to Dismiss (Dkt 40) is granted.  An Order and corresponding Judgment will be entered consistent with this Opinion.  *See* FED. R. CIV. P. 58.


Dated: March 10, 2015              /s/ Janet T. Neff
                                                                 JANET T. NEFF
                                                                 United States District Judge